IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CUMMINS-ALLISON CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:07CV196 |
| v. | § | |
| | § | |
| SBM CO., LTD., (formerly known as | § | JUDGE RON CLARK |
| SHINWOO INFORMATION & | § | |
| TELECOMMUNICATIONS CO. LTD.) and | § | |
| AMRO-ASIAN TRADE, INC., | § | |
| | § | |
| *Defendants*. | § | |

## **ORDER**

Before the court are the parties' responses to the court's July 9, 2008 Order indicating it would consider submitting to the jury a question on future damages. Defendants have not responded. Plaintiff objects, asserting that because it is entitled to a permanent injunction if the jury finds infringement, submission of a question on a future royalty rate would confuse the jury, greatly increase the time and expense of trial preparation, and endanger its right to seek injunctive relief.

Juries are regularly asked to determine future lost profits and loss of earning capacity, so the proposed question should not be confusing. Unless experts employ artificially inconsistent methods of calculating pre- and post-trial royalty rates, analyzing the future royalty rate will not substantially increase the complexity of the overall damages analysis. Issuance of an injunction is not foreclosed simply because it is possible to calculate a future royalty rate. The parties should be prepared to address the issue of future damages at trial.

**Potential for Jury Confusion**

Determining a percentage rate or a royalty per item to apply to future sales in a patent case is no more difficult than the tasks commonly performed by jurors when asked to calculate future lost profits, earning capacity, medical expenses, or pain and suffering. For example, in a traditional lost profits case, the jurors must determine what sales are reasonably likely to occur in the future, analyze the expected profit margin, and then reduce the total to present value. Calculation of a future royalty rate is less speculative, because it will be applied to sales as, and if, they actually occur. There is no need to go through a complex reduction to present value analysis.

Without minimizing the importance of intellectual property rights, it seems that if we can submit death penalty cases to juries, we should also be able to trust them to determine a royalty rate that will be paid by a corporation if it chooses to make sales of an infringing product. Of course, the jury will not be informed of the possibility of an injunction. Therefore, any confusion on the part of counsel will not affect the verdict.

**Alleged Increase in Trial Preparation Cost**

Plaintiff makes an unsupported argument that the case will be needlessly complicated by the issue of post-trial damages, which will "require expenditures of considerable amounts of time." This is true only if Plaintiff's damages expert chooses inconsistent methods of analysis.

Calculations of a pre-trial royalty rate are premised on the assumption of a willing buyer and a willing seller negotiating over a valid patent, which the buyer's system, method, or product infringes. *See Georgia-Pacific Corp. v. United States Plywood Co.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). In this type of damages analysis, as in other calculations in the field of

economics, assumptions are used to hold one or more variables constant and are treated as facts. *See* Campbell R. McDonnell, Economics 7 (8th ed. 1981); Roger N. Waud, Economics 8-9 (2d ed. 1983); *see also* Black's Law Dictionary 134 (8th ed. 2004) (an "assumption" is *"*1. A fact or statement taken for granted.").

It is self-evident that changing the assumptions of an economic analysis will change the results. But failure to impose some limit on the variables an expert may consider would result in a useless exercise in which, for a fee, Plaintiff's expert drones on about a punitive royalty rate based on the absolute unwillingness of his client to license the patent-in-suit to the Defendant for a host of reasons which could realistically include jealousy, hatred, or greed.

The beauty of the *Georgia-Pacific* analysis is that the courts have required calculation of a royalty rate to be based upon the assumption of the willing buyer/willing seller scenario described above. The experts for both parties must ground their opinions on the same assumed facts, giving the court and jurors a common framework for evaluation of other variables. The expert who argues post-trial that these assumptions were not used as facts in his analysis admits that he failed to use the underlying assumption of the *Georgia-Pacific* analytical framework.

Given this understanding of the meaning and function of an economic "assumption," a jury finding of infringement and no invalidity does not change any logically consistent analysis; rather, it merely confirms the original assumption of those facts.[1] It is inconsistent and unnecessarily confusing to adopt the position that once the assumed facts upon which the

---

[1] In reality, the verdict is not much of a confirmation. After all, as a matter of statistical probability, there is a forty percent chance that the case will be reversed based on claim construction alone, to say nothing of error at trial. In short, until the final appeal is concluded, the expert is still merely assuming infringement and validity.

expert's analysis of the hypothetical negotiation are confirmed by a verdict, the expert can change his opinion of a reasonable royalty rate.

The problem with ignoring or overruling *Georgia Pacific* and basing the royalty rate calculation entirely on a "real world" view of the hypothetical negotiation or future damages is that the damages expert should then, as real world lawyers and business owners would do, also consider the relative strength of the infringement and invalidity cases, current trends of patent law, the merits of the parties' lawyers, their perceived influence with judges, and even factors such as their willingness to engage in abusive attempts to spend opponents into bankruptcy. In effect, economists and accountants would render opinions on the merits of the case and the probable prevailing party. Requiring them to base their conclusions on common, fixed assumptions may seem artificial, but courts have adopted the hypothetical negotiation technique for many years in cases involving the acquisition of property.[2] *See, e.g., Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 473-74, 93 S. Ct. 791, 794 (1973) (when discussing eminent domain, in order to determine monetary equivalence, "the Court early established the concept of 'market value': the owner is entitled to the fair market value of his property at the time of the taking. . . And this value is normally to be ascertained from what a willing buyer would pay in cash to a willing seller."); *City of New York v. Sage*, 239 U.S. 57, 61, 36 S. Ct. 25, 27 (1915)("[W]hat the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have

---

[2]As a young attorney, the undersigned appeared before an older judge who dismissed all expert opinions on damages as unreliable and drastically curtailed such testimony. This approach shortens trials, but constraining expert testimony with reasonable assumptions applied in light of Fed. R. Evid. 702 and the *Daubert* analysis seems to be preferable.

given for it in fact,-not what a tribunal at a later date may think a purchaser would have been wise to give. . . .").

Calculating a future royalty rate should be little different than opining on the rate the parties would have agreed upon at the hypothetical negotiation. Naturally, a successful Plaintiff wants to argue that "everything has changed." This conveniently ignores the fact that even a minimally competent damages expert will have included in pre-trial calculations every advantageous change in profits, sales, and other conditions that occurred prior to trial under the "book of wisdom" rubric. *See Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled in part on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (citing *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698, 53 S. Ct. 786, 739 (1933)); *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) ("an actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation.").

It is true that some factors such as the relative importance of the technology or the availability of a design-around may have changed since the date of first infringement. To the extent these were not considered in the "book of wisdom" analysis and will not be accounted for in total future sales, these factors can be explained without a great deal of difficulty. In short, the court is not convinced that submitting a question on future royalty rate is likely to increase the time or expense of pre-trial preparation. Unless the expert attempts to engage in a convoluted

"that was then, this is now" presentation to the jury, little additional time need be devoted at trial to explain the forward royalty rate.[3]

### Effect on Injunctive Relief

Assuming Plaintiff obtains a favorable verdict, the court will have to consider the question of injunctive relief in light of the traditional four-factor test. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). Plaintiff argues that because after the *e-Bay* decision injunctions have been granted in nine cases in which the parties were competitors and denied in three where they were not, an injunction will issue in this case if it prevails on infringement and invalidity at trial. Those twelve cases had their own unique factors. *e-Bay* holds that injunctions are not the presumptive norm in patent cases, and requires the trial court to examine the facts of each case individually in light of four traditional factors. It does not seem likely that the Supreme Court took the trouble to state that rule, only to have this court adopt a new single-factor test.

Plaintiff seems most fearful that a jury finding on a royalty rate will determine one of the four factors – the adequacy of legal remedies. The adequacy of remedies available at law is only one of the four *e-Bay* factors the court would consider. More to the point, merely because experts can opine on, and a jury can arrive at, a future royalty rate does not mean that such compensation would automatically be adequate. Some amount of money could be calculated for

---

[3] The trial judge will also be saved the trouble of having to pore over a post-trial "analysis" of a markedly different rate offered by well-paid experts willing to change their analytical constructs in order to serve their clients. *See Watkins v. Telsmith, Inc*., 121 F.3d 984, 991 (5th Cir. 1997) (where the court stated that a determination of whether an expert will be allowed to testify includes an evaluation of "whether the expert is a hired gun or a person whose opinion in the courtroom will withstand the same scrutiny that it would among his professional peers" ).

any interference with property rights; that does not necessarily make the amount an adequate legal remedy.

Consider the textbook example of a company cutting down trees on another's land. Some monetary value can always be determined for the lumber and the damage, even if it is as much as the market value of the whole property. Just because a legal remedy is mathematically calculable does not foreclose a court from enjoining the logging company from future deforestation. Monetary damages – the legal remedy – may simply be inadequate.[4]

The difficulty in arriving at a monetary amount may weigh in favor of an injunction. For example, the court may decide that even though some monetary amount can be calculated, the difficulties in arriving at a dollar value of damages weigh in favor of an injunction. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.2d 12, 19 (1st Cir. 1996) ("If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel."); *Systemation, Inc. v. Engel Indus., Inc.*, 194 F.3d 1331 (Fed. Cir. 1999) (unpublished) (affirming district court's grant of a preliminary injunction where "damages would be very difficult to calculate and might not compensate [Plaintiff] fully for infringement by [Defendant].").

If an injunction issues, a jury finding on the future damages question may still be helpful in setting a reasonable royalty to be paid into escrow during the period of any stay that might be

---

[4]*See Hoellen v. Annunzio*, 468 F.2d 522, 528 (7th Cir. 1972) (injunctive relief was appropriate where Defendant congressman's mass mailings of campaign literature to non-constituents produced a harm to Plaintiff's candidacy "not adequately compensable in damages."); *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (a high probability of confusion in a trademark case weighed in favor of granting an injunction because the injury to the Plaintiff's reputation "may not be fully compensable in damages.").

granted. *See, e.g., Amado v. Microsoft Corp.*, 517 F.3d 1353 (Fed. Cir. 2008) (where the district court's award of a post-judgment royalty paid into escrow during stay of permanent injunction was approved by Federal Circuit and remanded only so the district court could reconsider the reasonableness of its post-verdict royalty rate). Finally, if no injunction is warranted under the *eBay* factors, the jury verdict may aid the parties and/or the court in determining an ongoing royalty rate.[5]

In other words, a question submitted to the jury on the issue of future damages neither helps nor hurts Plaintiff's case for an injunction; it merely provides the court with a guide, if the court determines that monetary damages are appropriate either in full or during a temporary stay. The Federal Circuit has recognized the need for the district court to provide a "concise but clear explanation of its reasons for the [future royalty] fee award." *Amado*, 517 F.3d 1353, 1362. The jury verdict provides some assistance in this regard. As stated by United States District Judge William Young, the concept of a jury question on future damages is "not only efficient" but a technique that "recognizes the vital role of the jury as fact finding partner." *Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, – F. Supp. 2d –, 2008 WL 4452454 at *45, n.12 (D. Mass Oct. 2, 2008).

The holding in *Innogenetics, N.V. v. Abbot Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) is not to the contrary. While the Federal Circuit did vacate the district court's grant of a permanent injunction in that case because the jury's award of future damages negated any potential for

---

[5]Because the parties will have an opportunity to confer on the issue of future damages post-verdict and before final judgment is entered, the court's submission of this question to the jury does not run afoul of the Federal Circuit's statement in *Paice* that the court "may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty." *Paice L.L.C. v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).

irreparable harm resulting from future sales, *Innogenetics* is distinguishable because the jury award in that case made no distinction between past and future damages. In other words, the Plaintiff in *Innogenetics* automatically received future damages based on the jury's verdict, and, according to the Federal Circuit, was already adequately compensated for future infringement.

A separate question on a proper future royalty rate will be submitted to the jury. Any finding on that question may be taken into account by the court and the parties when arriving at a value for future damages, but would not automatically result in an award of future damages in that amount.

The proposed jury question in the court's July 9, 2008 Order is only one way in which this issue may be submitted.[6] In formulating their jury instructions, the parties should consider whether the jury should be instructed regarding a future reasonable royalty, lost profits, price per unit, or some other appropriate measure of future damages. Of course, the final question will depend on the evidence submitted and the theories of recovery pending at that time.

So **ORDERED** and **SIGNED** this **3** day of **November, 2008.**

_____
Ron Clark, United States District Judge

---

[6] A variation would be: "What rate or sum of money, if any, do you find is adequate as a reasonable royalty to compensate Plaintiff for the conduct you found to infringe that occurs in the future? Answer in a percentage of gross sales revenue or in dollars and cents per infringing product sold."