IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CUMMINS-ALLISON CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:07CV196 |
| v. | § | (consolidated) |
| | § | |
| SBM CO., LTD. and AMRO-ASIAN TRADE, INC., | § | JUDGE RON CLARK |
| | § | |
| *Defendants*. | § | |

## ORDER Re: DAMAGES FOR POST-VERDICT SALES OF INFRINGING PRODUCTS

After considering the jury's findings and ruling on the parties' motions for judgement as a matter of law ("JMOL"), the court has, by contemporaneous orders, awarded the damages found by the jury for pre-trial infringing conduct and entered a permanent injunction against Defendants to prevent future infringing conduct. As often happens, sales of infringing products were made between the date the verdict was received and the date the permanent injunction was entered.

The proper calculation of post-verdict damages became a more hotly contested issue after the Supreme Court held that injunctive relief must be considered under the traditional four-factor test. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). To determine post-verdict damages, a hearing is frequently held some weeks or months after trial, at which the parties, supported by their experts, present a revised version of the damage calculations that were presented at trial. The successful patent-holder argues that a new economic analysis is needed, because a verdict of infringement means that post-verdict sales of

1

infringing products are willful. It is not clear to this court how the jury's verdict changes the supposedly objective analysis of lost profits or a reasonable royalty.

The verdict of infringement does normally mean that future infringement is willful. When infringement is willful, Congress has provided that "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Since Congress has limited courts to trebling the reasonable damages, it may be helpful for the court to first determine reasonable damages for sales occurring or to occur after the verdict (whether in the form of lost profits, royalty, or some other measure), and then increase that amount to account for willfulness.

In this case, pursuant to notice given to the parties well before trial, the jury was asked to determine future damages, and arrived at a royalty rate of $400.00 per infringing unit sold. There is substantial evidence to support this finding. In accordance with 35 U.S.C. § 284, and after considering the *Seagate* factors,[1] the court has determined that Defendants' post-verdict sales were willful and enhances the jury's award to $500.00 per infringing unit sold.

## I. Background

Cummins-Allison Corp. ("Cummins") asserted infringement of four patents dealing with methods and devices for currency denomination and counterfeit detection. At trial, Defendants did not contest infringement as to the asserted representative claims of U.S. Patent No. 6,459,806 ("the '806 patent") and U.S. Patent No. 5,966,456 ("the '456 patent"). The jury found that the asserted representative claims of U.S. Patent No. 5,909,503 ("the '503 patent") and U.S. Patent No. 6,381,354 ("the '354 patent") were infringed. The jury failed to find that any of the claims of the patents-in-suit were invalid. At the post-trial hearing, the court granted Defendants'

---

[1] *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1370-71 (Fed. Cir. 2007).

motions for JMOL as to the '354 and '456 patents on the grounds of invalidity, and the court denied Defendants' motions for JMOL as to the '806 and '503 patents.[2] The court will enter judgment on the verdict as to the asserted representative claims of those two patents, since the parties agreed that the invalidity of the '354 and '456 patent claims does not alter the measure of damages. *See* Oct. 22 Tr. p. 73, ll. 4-21.[3]

The court has determined, pursuant to 35 U.S.C. § 283, and after applying the traditional four-factor test for a permanent injunction, *see eBay*, 547 U.S. at 391, 126 S. Ct. at 1839, that a permanent injunction is warranted to prevent future violations of the rights secured by Cummins's '806 and '503 patents. *See* Oct. 23 Tr. p. 21, l. 24 through p. 23, l. 10. Defendants stated at the post-trial hearing that they have made sales of infringing products since the date trial concluded. *See* Oct. 23 Tr. p. 34, ll. 12-18. The court is presented with the question of what damages will adequately compensate Cummins for these sales.

## II. Properly Calculating Lost Profits or a Reasonable Royalty

Damages for lost profits are generally based on the guidance provided in, and the cases explaining, *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) and *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989). Calculation of a reasonable royalty is typically grounded on the fifteen factors set out in, and the cases

---

[2] The transcript of the post-trial hearing will be cited as "Oct. 22 Tr. p. __, l. __" or "Oct. 23 Tr. p. __, l. __." Citations in this order are made to the rough transcript; the location of the cited material in the official transcript may vary slightly.

[3] Based on the testimony of their damage experts, the parties agreed that the damage award would be the same if one or more of the patents-in-suit was found to be infringed, with the exception that there would be a slight reduction in damages if only the '503 patent was found infringed. [*See* Doc. #201, Jury Trial Tr. Vol. 4 at p. 755, l. 22 through p. 757, l. 1 (Plaintiff's expert); Doc. #201 at p. 843, l. 15 through p. 844, l. 10 (Defendants' expert).]

3

expounding upon, *Georgia-Pacific Corp. v. U.S. Plywood Co.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Whether a patentee claims lost profits, a reasonable royalty, or some mix of the two, the court has found no authority for the proposition that it is improper to submit to the jury the question of damages for infringement through the date of trial. However, as they did in this case, parties often raise objections to submitting to the jury any question regarding post-trial damages.

**1. Does the Verdict Mean That Lost Profits or Royalty Must Be Calculated Differently?**

Calculations of lost profits are proper when a party proves that it had the capacity to make some or all of the infringing sales and there is a reasonable probability that, but for the infringement, it would have made those sales. *State Indus.*, 883 F.2d at 1577. No case indicates that a finding of willfulness plays any part in this analysis, and it is difficult to see how an expert could, with a straight face, argue that a jury's verdict of infringement changes the economic analysis of future lost profits.

Calculations of a pre-trial royalty rate are premised on the assumption of a willing buyer and a willing seller negotiating over a valid patent, which the buyer's system, method, or product infringes. *See Georgia-Pacific*, 318 F. Supp. at 1120. In this type of damages analysis, as in other calculations in the field of economics, assumptions are used to hold one or more variables constant, and these assumptions are treated as facts. *See* Campbell R. McDonnell, *Economics* 7 (8th ed. 1981); Roger N. Waud, *Economics* 8-9 (2d ed. 1983); *see also Black's Law Dictionary* 134 (8th ed. 2004) (an "assumption" is "1. A fact or statement taken for granted."). It is self-evident that changing the assumptions of an economic analysis will change the results. But failure to impose some limit on the variables an expert may consider would result in a useless exercise in which, for a fee, a plaintiff's expert drones on about a punitive royalty rate based on

the absolute unwillingness of his client to license the patent-in-suit to the defendant for a host of reasons which could realistically include jealousy, hatred, or greed.

If the experts for both parties must ground their opinions on the same assumed facts, the court and jurors have a common framework for evaluation of other variables. The expert who argues post-trial that these assumptions were not treated as facts in his analysis admits that he failed to properly apply the underlying assumptions of the *Georgia-Pacific* analytical framework. Given this understanding of the meaning and function of an economic "assumption," a jury finding of infringement and no invalidity does not change any logically consistent analysis; rather, it merely confirms facts originally assumed.

Requiring experts to base their conclusions on common, fixed assumptions may seem artificial, but courts have adopted this hypothetical negotiation technique for many years in cases involving the acquisition of property. *See, e.g.*, *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473-74, 93 S. Ct. 791, 794 (1973) (In eminent domain context, owner is to be put in the same position monetarily as he would have been but for the taking, and "[t]o determine such monetary equivalence, the Court early established the concept of 'market value': the owner is entitled to the fair market value of his property at the time of the taking. And this value is normally to be ascertained from 'what a willing buyer would pay in cash to a willing seller.'" (citations omitted)); *City of N.Y. v. Sage*, 239 U.S. 57, 61, 36 S. Ct. 25, 27 (1915) ("[W]hat the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact,—not what a tribunal at a later date may think a purchaser would have been wise to give . . . .").

5

Calculating a future royalty rate should be little different than opining on the rate the parties would have agreed upon at the hypothetical negotiation. If there have been changes in the market between the date of the hypothetical negotiation and the date of trial, a damages expert may include in pre-trial calculations every advantageous change in profits, sales, and other conditions under the "book of wisdom" rubric. *See Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988), *overruled in part on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1343-44 (Fed. Cir. 2004) (citing *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698-99, 53 S. Ct. 736, 739 (1933)); *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1385 (Fed. Cir. 2001) ("[A]n actual infringer's profit margin can be relevant to the determination of a royalty rate in a hypothetical negotiation."). To the extent that some recent change was not considered in the "book of wisdom" analysis and will not be accounted for in total future sales, such a change can be explained to the jury without a great deal of difficulty.

The real concern patentees seem to have about submitting future damages to the jury is the perception that they will somehow lose out on the possibility of an enhancement for willfulness. However, Congress clearly intended that after the fact finder has determined a reasonable royalty, lost profits, or some combination of the two, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Congress has limited the court to a trebling of the damages, and the court is required to provide "a concise but clear explanation of its reasons for the fee award." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008) (quoting *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007)). While a judge might simply determine an amount of enhanced damages, it appears

that there may be advantages to first calculating the proper measure of damages without consideration of willfulness, and then determining whether, and by how much, the award should be enhanced.

Although *Amado* clearly allows a judge to determine post-verdict damages, a jury verdict can provide assistance in this regard. As stated by United States District Judge William Young, the concept of submitting a jury question on future damages is "not only efficient," but a technique that "recognizes the vital role of the jury as fact finding partner." *Amgen, Inc. v. F. Hoffman-La Roche Ltd.*, 581 F. Supp. 2d 160, 210 n.12 (D. Mass. 2008), *vacated in part on other grounds*, 580 F.3d 1340 (Fed. Cir. 2009). By submitting a question on future damages to the jury, the court may avoid a mini-trial to the bench on post-verdict damages. The experts will have to explain to jurors why changes in their method of analysis between pre-trial and post-verdict damages do not reflect inconsistency or greed.

**2. Does Submission of Future Damages to the Jury Needlessly Complicate the Trial?**

Cummins argued that this case would be needlessly complicated by presenting the issue of post-trial damages to the jury, asserting that adding the issue of post-verdict damages to the trial would "require expenditures of considerable amounts of time." This would be true only if Plaintiff's damages expert had chosen inconsistent methods of analysis. In the present case, while the experts disagreed on the amount of damages, their respective opinions on the calculation of past and future damages were internally consistent. There was no indication that preparing their opinions on future damages required expenditures of time or money comparable to what would have been involved in preparing for a separate hearing on future damages before the bench.

7

There may be cases where it makes sense for the court to defer analysis of post-verdict damages until after the jury trial. Fortunately, Congress has given courts the discretion to make this determination on a case-by-case basis. *See* 35 U.S.C. § 284 ("When the damages are not found by a jury, the court shall assess them.").

**3. A Jury Finding on an Amount of Future Damages Does Not Preclude an Injunction.**

Patentees, including Plaintiff in this case, seem fearful that a jury finding on a royalty rate will determine one of the four *eBay* factors—the adequacy of legal remedies. The adequacy of remedies available at law is only one of four factors courts consider when determining whether to issue a permanent injunction. *See eBay*, 547 U.S. at 391, 126 S. Ct. at 1839. It is true that difficulty in calculating damages accurately may support an injunction. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). Perhaps experts will figure out how to solve some alleged difficulties when they contemplate the common-sense review by a jury of testimony that a princely sum was reliably calculated for pre-trial damages, but future damages could not be estimated.

Of course, merely because experts can opine on, and a jury can arrive at, a royalty rate or some amount of lost profits does not mean that such compensation would automatically be adequate. Some amount of money could be calculated for any interference with property rights; that does not necessarily make the amount an adequate legal remedy. *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) (high probability of consumer confusion in trademark case weighed in favor of injunction because injury to plaintiff's reputation "may not be fully compensable in damages").

In the present case, the court decided to issue an injunction after consideration of the four *eBay* factors. *See* Oct. 23 Tr. p. 21, l. 24 through p. 23, l. 10. Nevertheless, the jury's verdict is helpful in determining a proper award for sales of infringing products that occurred between the time of trial and the date of the injunction. Likewise, a jury finding on the future damages question may also be helpful in a case in which the court must set a reasonable royalty to be paid into escrow during the period of a stay. *See, e.g.*, *Amado*, 517 F.3d at 1361-62 (district court's award of post-judgment royalty to be paid into escrow during stay of permanent injunction approved by Federal Circuit and remanded only for district court to reconsider reasonableness of post-verdict royalty rate). Finally, in a case in which no injunction is warranted under the *eBay* factors, the jury verdict may aid the parties and/or the court in determining an ongoing royalty rate.[4]

In other words, a question submitted to the jury on the issue of future damages neither helps nor hurts a plaintiff's case for an injunction; it merely provides the court with a basis for decision if the court determines that monetary damages are appropriate to compensate for some, or all, infringing sales made after trial. The holding in *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008) is not to the contrary. While the Federal Circuit did vacate the district court's grant of a permanent injunction in that case because the jury's award of future damages negated any potential for irreparable harm resulting from future sales, *Innogenetics* is distinguishable because the jury award in that case made no distinction between past and future

---

[4] If the parties are given an opportunity to confer on the issue of future damages post-verdict and before final judgment is entered, the court's submission of this question to the jury would not run afoul of the Federal Circuit's statement in *Paice* that the court "may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty." *Paice*, 504 F.3d at 1315.

damages. In other words, the plaintiff in *Innogenetics* automatically received future damages based on the jury's verdict, and, according to the Federal Circuit, was already adequately compensated for future infringement. *See Innogenetics*, 512 F.3d at 1379-80.

### III. Determination of Post-Verdict Award

In this case, the court issued an order prior to trial stating that it would submit to the jury a question on future damages. [*See* Doc. #72.] At trial, the court submitted to the jury the following question: "What sum of money, if any, do you find is adequate to compensate Cummins for the conduct you found to infringe, that occurs in the future?" [*See* Doc. #190, Jury Verdict Form at 9.] The jury could choose to answer in either terms of lost profits per unit, or in terms of a reasonable royalty per unit. [*See* Doc. #190 at 9.] The jury answered that a reasonable royalty of $400.00 per unit would be adequate compensation. [Doc. #190 at 9.] As stated on the record at the post-trial hearing, the court finds that the testimony of Dr. Ugone and Ms. Rinke, the parties' damages experts, provided substantial evidence to support the jury's verdict, and finds that $400.00 per unit would be a reasonable royalty for sales of infringing products occurring between trial and entry of the injunction. *See* Oct. 23 Tr. p. 34, ll. 19-24.

Pursuant to 35 U.S.C. § 284, the court next considers whether the award of damages for post-verdict sales should be enhanced for willfulness. As directed by the court, Cummins asserted representative claims. [*See* Doc. #106, Pl.'s Selection of Eight Claims.] Based on the testimony of their damages experts, the parties agreed that the damage award would be the same if one or more of the patents-in-suit was found to be infringed, with the exception that there would be a slight reduction in damages if only the '503 patent was found infringed. [*See* Doc. #201 at p. 755, l. 22 through p. 757, l. 1 (Plaintiff's expert); Doc. #201 at p. 843, l. 15 through

p. 844, l. 10 (Defendants' expert); Oct. 22 Tr. p. 74, l. 24 through p. 75, l. 13 (post-trial hearing).] Once the jury found that all of the asserted claims were infringed and not invalid, unless Defendants obtained JMOL or reversal on appeal as to every one of the representative claims of the four patents-in-suit, future sales would be infringing. In other words, Defendants cannot avoid a finding of willfulness by asserting that they had strong arguments as to invalidity of two of the patents. (The court granted JMOL as to the '354 and '456 patents.)

In this regard, the court focuses most strongly on the '806 patent. At trial, Defendants did not even contest infringement of this patent. [*See* Doc. #202, Jury Trial Tr. Vol. 5 at p. 1201, l. 10 through p. 1203, l. 4.] They could only prevail by presenting clear and convincing evidence of invalidity, which they did not. *See* Oct. 22 Tr. p. 108, ll. 3-13 and p. 110, l. 7 through p. 113, l. 5 (denying Defendants' motion for JMOL as to invalidity of the '806 patent). The weight of the evidence supporting the jury verdict for Cummins as to the '806 patent, the lack of evidence to support a finding of invalidity, the fact that the jury found against Defendants on this issue, and the deferential standard of review applied to a jury verdict, establish an objectively high likelihood that even after any appeals are concluded, sales of the accused products will constitute infringement of one or more valid claims. Defendants may have a slightly better argument as to the '503 patent, but again, given the evidence presented and the way it was presented to the jury, *See* Oct. 22 Tr. p. 113, l. 15 through p. 116, l. 13 and p. 122, l. 21 through p. 124, l. 19, the clear and convincing burden of proof, and the deferential standard of review of a jury verdict, the court concludes that there is an objectively high likelihood that post-verdict sales will infringe a valid claim.

These factors bear on the willfulness of Defendants' post-verdict sales of infringing products. *See Seagate*, 497 F.3d at 1370-71. Although the jury did not find willfulness as to Defendants' pre-trial sales, the court finds that Defendants' post-verdict sales are willful. *See* Oct. 23 Tr. p. 34, l. 25 through p. 36, l. 4. The court further finds, for the reasons stated on the record, that the $400.00 per unit reasonable royalty found by the jury should be enhanced to $500.00 per unit for sales of infringing products occurring between trial and the date the injunction is entered. *See* Oct. 23 Tr. p. 36, ll. 5-17 and p. 38, ll. 11-16.

## IV. Conclusion

Judgement will be entered on the verdict for the amount of damages found by the jury for pre-trial sales of infringing products, together with enhanced damages of $500.00 per unit for sales of infringing products occurring between trial and judgment, together with pre-judgment and post-judgment interest to be calculated as stated on the record. *See* Oct. 23 Tr. p. 31, ll. 19-21 and p. 32, ll. 20-25 (pre-judgment interest); Oct. 22 Tr. p. 181, ll. 21-23 (post-judgment interest, referring to 28 U.S.C. § 1961). It is hereby **ORDERED** that by November 20, 2009, Defendants shall provide Plaintiff with sales information setting out all sales of the accused products made from October 8, 2009 to October 30, 2009.

So **ORDERED** and **SIGNED** this **30** day of **October, 2009.**

_____
Ron Clark, United States District Judge