**\*\*NOT FOR PRINTED PUBLICATION\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CUMMINS-ALLISON CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:07CV196 |
| v. | § | (consolidated) |
| | § | |
| SBM CO., LTD. and AMRO-ASIAN | § | JUDGE RON CLARK |
| TRADE, INC., | § | |
| | § | |
| *Defendants*. | § | |

## **REVISED MEMORANDUM AND ORDER**[*]

Cummins-Allison Corp. ("Cummins") asserted infringement of four patents dealing with methods and devices for currency denomination and counterfeit detection. At trial Defendants did not contest infringement as to the asserted representative claims of U.S. Patent No. 6,459,806 ("the '806 patent") and U.S. Patent No. 5,966,456 ("the '456 patent"). The jury found that the asserted representative claims of U.S. Patent No. 5,909,503 ("the '503 patent") and U.S. Patent No. 6,381,354 ("the '354 patent") were infringed. The jury failed to find that any of the claims of the patents-in-suit were invalid. Before the court are Cummins-Allison's motion to correct the inventorship of the '456 patent [Doc. #180] and several motions for judgment as a matter of

---

[*] This revised order is intended to replace the court's October 30, 2009 order [Doc. #218]. The only change is that citations in this order are to the official, rather than the rough, transcript of the October 22-23, 2009 post-trial hearing. Footnote 1 has been altered to reflect this change.

1

law ("JMOL") made by the parties on the record at trial. This order confirms the rulings made on the record at the post-trial hearing of these motions.[1]

In summary, the court denies the motion to correct inventorship of the '456 patent and grants Defendants' motions for JMOL as to the '354 and '456 patents on the grounds of invalidity. The court denies Defendants' motions for JMOL as to the '806 and '503 patents. The court will enter judgment on the verdict as to the asserted representative claims of those two patents, since the parties agreed that the invalidity of the '354 and '456 patent claims does not alter the measure of damages. [*See* Doc. #220, Post-trial Hr'g Tr. Vol. 1 at p. 82, l. 7 through p. 83, l. 2.][2]

**I. Motion to Correct the Inventorship of the '456 Patent**

Plaintiff Cummins-Allison Corp. ("Cummins") asks that the court order correction of the inventorship of the '456 patent to add four additional inventors: Donald E. Raterman, Bradford T. Graves, Lars R. Stromme, and Aaron M. Bauch. Defendants SBM Co., Ltd. ("SBM") and Amro-Asian Trade, Inc. ("Amro") argue that Cummins has not met its burden of proving the alleged co-inventorship by clear and convincing evidence, and that in any case, laches should bar the request to correct the '456 patent.

---

[1] The transcript of the post-trial hearing will be cited as "[Doc. #___, Post-trial Hr'g Tr. Vol. ___ at p. ___, l. ___]" or "[Doc. #___ at p. ___, l. ___]." Citations in this revised order are made to the official transcript.

[2] As directed by the court, Cummins asserted representative claims. [*See* Doc. #106, Pl.'s Selection of Eight Claims.] Based on the testimony of their damages experts, the parties agreed that the damage award would be the same if one or more of the patents-in-suit was found to be infringed, with the exception that there would be a slight reduction in damages if only the '503 patent was found infringed. [*See* Doc. #201, Jury Trial Tr. Vol. 4 at p. 755, l. 22 through p. 757, l. 1 (Plaintiff's expert); Doc. #201 at p. 843, l. 15 through p. 844, l. 10 (Defendants' expert); Doc. #220 at p. 84, ll. 7-23 (post-trial hearing).]

**A. Applicable Law**

*1. Correction of Inventorship*

35 U.S.C. § 256 allows for correction of the designated inventors on an already-issued patent. *See* 35 U.S.C. § 256 ("The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent . . . if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned . . . ."). A patented invention may be the work of two or more joint inventors. *Eithicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Because conception is the "touchstone of inventorship," each alleged joint inventor must contribute to the conception of the invention. *Id.* Co-inventors need not contribute to the subject matter of every claim of the patent. *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004). However, joint inventorship only arises when collaboration or concerted effort occurs, that is, when the inventors have "some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).

"Because a patent is presumed valid under 35 U.S.C. § 282, there follows a presumption that the named inventors on a patent are the true and only inventors." *Gemstar*, 383 F.3d at 1381. Alleged co-inventors must establish their co-inventorship by clear and convincing evidence. *Id.* at 1382. A party claiming his own prior inventorship must proffer evidence corroborating his testimony. *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001). A "rule of reason" analysis is applied to determine whether an inventor's testimony has been corroborated, and each corroboration case must be decided on its

own facts to determine whether the evidence as a whole is persuasive and the inventor's story is credible. *Id.* Documentary or physical evidence made contemporaneously with the inventive process is the most reliable proof that the inventor's testimony has been corroborated. *Id.* at 1350-51. Circumstantial evidence about the inventive process may also corroborate. *Id.* at 1351. Oral testimony of someone other than the alleged inventor may also corroborate, but "post-invention oral testimony is more suspect, as there is more of a risk that the witness may have a litigation-inspired motive to corroborate the inventor's testimony, and that the testimony may be inaccurate." *Id.*

Finally, correction under Section 256 is not automatic; there must be a showing that the error in inventorship occurred "without any deceptive intent on the part of the unnamed inventor." *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998). "While lack of deceptive intent, as a negative, may be hard for a patentee to prove when it claims relief under the statute, good faith is presumed in the absence of a persuasive showing of deceptive intent." *Id.* at 1350 n.4.

*2. Laches*

Section 256 does not limit the time during which inventorship can be corrected. *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1162 (Fed. Cir. 1993) ("Since the defense of patent invalidity based on incorrect inventorship can be raised at any time, correction of inventorship should be similarly available at any time."). Section 256 serves the public policy of preserving property rights from avoidable forfeiture. *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994) (noting that equity always leans against forfeitures). However, equity also disfavors undue and prejudicial delay by a person who

4

may have an interest in the property of another. *Id.* Balancing these equitable interests, the defense of laches has been applied in actions under Section 256. *Id.*

Dismissal of a claim on the ground of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *Advanced Cardiovascular*, 988 F.2d at 1161. "Both of these factual premises must be met, predicate to the weighing of the facts of delay and prejudice to determine whether justice requires that the claim be barred." *Id.* The burden of proof is on the party raising the laches defense. *Id.* With respect to the first element, the delay should be measured from the date the purported inventor knew or should have known that the patent had issued and that he was omitted as a joint inventor, and a delay of more than six years will produce a rebuttable presumption of laches. *Id.* at 1162. As to the second element, the prejudice may be either economic or evidentiary. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (en banc). Evidentiary prejudice may arise by reason of a defendant's inability to present a full and fair defense due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. *Id.* Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. *Id.*

**B. Discussion**

At the post-trial hearing, the court heard testimony from Mr. Graves and Mr. Bauch, as well as from the two named inventors on the '456 patent, William J. Jones and Douglas U. Mennie. Mr. Raterman and Mr. Stromme are deceased. [Doc. #220 at p. 8, ll. 11-12.]

Mr. Graves, Mr. Bauch, Mr. Jones, and Mr. Mennie testified regarding who had invented or contributed to various claims of the '456 patent, and when they had become aware that the inventorship of the patent needed correction. Having considered this testimony, the arguments made by counsel at the hearing, Cummins's written motion, the parties' briefs on the inventorship issue, and other evidence presented at trial and at the hearing, the court finds, for the reasons stated on the record, that the inventors' testimony was not sufficiently corroborated. [*See* Doc. #220 at p. 96, l. 7 through p. 102, l. 9 and p. 105, l. 11 through p. 109, l. 2.]

Alternatively, the court holds that correction of inventorship would be barred by laches. [*See* Doc. #220 at p. 102, l. 10 through p. 105, l. 10 and p. 109, ll. 15-20.] In this somewhat unusual fact situation it is the named inventors and their employer, to which the patent was assigned, who seek to benefit from the long-delayed correction. As a matter of equity, their delay should be considered along with the delay of Mr. Graves and Mr. Bauch. Cummins and the named inventors knew from the date the application was filed that Mr. Graves and Mr. Bauch had not been named, and they were aware of the work Mr. Graves and Mr. Bauch had done on the earlier patents. Therefore, Cummins's motion to correct the inventorship of the '456 patent is denied.

## II. Motions for JMOL

Generally, a motion for JMOL is granted when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on an issue on which that party has been fully heard. Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 2109 (2000). In entertaining a motion for JMOL, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party.

*Reeves*, 530 U.S. at 150, 120 S. Ct. at 2110. The court may not make credibility determinations or weigh the evidence. *Id.* Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* The court should give credence to the evidence favoring the nonmovant, as well as evidence "supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from a disinterested witness." *Id.* JMOL should be denied when, viewing the evidence in the light most favorable to the nonmovant, and giving the nonmovant the benefit of all reasonable inferences, there is sufficient evidence of record to support a jury verdict in favor of the nonmovant. *See Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1307 (Fed. Cir. 2004).

Substantial evidence supports the jury's verdict where the movant carries the burden of persuasion and the jury could have reasonably concluded that this burden was not met. *See id.* at 1309 ("Because the jury could have reasonably concluded that GSE had not carried its burden of proving by clear and convincing evidence that Poly-America's '112 patent was invalid . . . we agree with the district court that substantial evidence supports the jury's verdict . . . ."); [*see also* Doc. #220 at p. 120, l. 24 through p. 122, l. 4].

**A. Defendants' Motions for JMOL that SBM's and Amro's Infringement Was Not Willful**

These motions are denied as moot because the jury failed to find willfulness on the part of SBM and Amro. [*See* Doc. #220 at p. 116, l. 16 through p. 117, l. 3.] As stated on the record at [Doc. #220 at p. 119, ll. 3-4], Plaintiff bears the burden to prove willfulness by clear and convincing evidence. There was substantial evidence supporting the jury's failure to find willfulness, as stated on the record at [Doc. #220 at p. 117, l. 4 through p. 119, l. 5].

7

**B. Motions for JMOL Relating to the '806 Patent**

*1. Infringement*

Defendants' motions for JMOL that claims 58, 85, and 120 of the '806 patent are not infringed were denied on the record at trial. [*See* Doc. #201, Jury Trial Tr. Vol. 4 at p. 911, ll. 17-18.] Similarly, Plaintiff's motions for JMOL that claims 58, 85, and 120 of the '806 patent are infringed were granted on the record at trial. [*See* Doc. #204, Jury Trial Tr. Vol. 7 at p. 1488, ll. 15-19.] Defendants do not dispute that the accused devices practice the methods claimed in claims 58, 85, and 120. [*See* Doc. #202, Jury Trial Tr. Vol. 5 at p. 1201, l. 10 through p. 1203, l. 4.]

*2. Validity*

Plaintiff's motions for JMOL that the "Mosler CF-400 Currency Sorter Parts Catalog" [Ex. No. DX68] and the "Specification on Toshiba Currency Fitness Sorter Model CF-401" [Ex. No. DX69] are not printed publications are denied as moot pursuant to the jury's finding of validity for the '806 patent. [*See* Doc. #220 at p. 120, ll. 7-18.] For the reasons stated on the record at [Doc. #220 at p. 119, l. 19 through p. 120, l. 6 and p. 122, l. 5 through p. 125, l. 11], Defendants' motions for JMOL that claims 58, 85, and 120 of the '806 patent are invalid as obvious are denied.

**C. Motions for JMOL Relating to the '503 Patent**

*1. Infringement*

Defendants move for JMOL that claim 15 of the '503 patent is not infringed by the accused products. Defendants argue that Cummins did not present sufficient evidence from which a jury could have found that the Defendants' products include the "means for comparing"

8

limitation found in claim 15. The parties' agreed construction for this means-plus-function limitation was

> This element is a means-plus function element to be construed under 35 U.S.C. § 112, ¶6.
>
> Function: "comparing, for each type of characteristic information, said respective output signal to corresponding reference information associated with the one of said plurality of sensitivity settings selected by said means for selecting for said type of characteristic information."
>
> The corresponding structure is the microprocessor 12 executing at least one of the algorithms described in column 12, line 41 through column 13, line 9, and column 18, line 45, through column 19, line 67.
>
> Under § 112, ¶6, the claim will literally cover the above structure and its equivalents.

[Doc. #66, Order on Agreed Claim Terms at 2.] Defendants do not dispute that the accused products perform the "means for comparing" function, but argue that Plaintiff did not present sufficient evidence from which a jury could have found that the accused products perform that function using an identical or equivalent structure, noting that Plaintiff's expert, Dr. Stephenson, only presented evidence "that the accused devices performed less than one-half of one sentence of [an] algorithm" described in the agreed-upon portions of the '503 specification. [*See* Doc. #206, Defs.' Br. for the Oct. 22, 2009 Hr'g at 13-14 (emphasis in original).]

Defendants agreed to a claim construction that referenced quite a large portion of the specification for the corresponding structure of this means-plus-function limitation. Although Dr. Stephenson's testimony did not compare the accused products to the entirety of the agreed-upon portion of the specification, the court notes that the claim construction requires only that the "means for comparing" function be performed by *one of* the algorithms described in the agreed-upon portion. For this reason, as well as the reasons stated on the record at [Doc. #220 at

9

p. 125, l. 23 through p. 129, l. 1 and p. 135, l. 21 through p. 137, l. 23], and viewing the evidence in the light most favorable to the nonmovant, the court finds that Cummins presented sufficient evidence from which a reasonable jury could have found by a preponderance of the evidence that Defendants' products infringe claim 15 of the '503 patent. Defendants' motion for JMOL that claim 15 of the '503 patent is not infringed by the accused products is therefore denied.

*2. Validity*

As stated on the record at [Doc. #220 at p. 130, ll. 10-18], Plaintiff's motion for JMOL that claim 15 of the '503 patent is valid is denied as moot pursuant to the jury's finding of validity for the '503 patent. For the reasons stated on the record at [Doc. #220 at p. 129, l. 2 through p. 130, l. 9 and p. 141, l. 5 through p. 142, l. 8], Defendants' motion for JMOL that claim 15 of the '503 patent is invalid as obvious is denied.

**D. Motions for JMOL Relating to the '354 Patent**

*1. Infringement*

Defendants move for JMOL that claim 55 of the '354 patent is not infringed by the accused products. Defendants argue that Cummins did not present sufficient evidence from which a jury could have found that the Defendants' products include the "signal processing means" limitation found in claim 55. The parties' agreed construction for this means-plus-function limitation was

> This element is a means-plus-function element to be construed under 35 U.S.C. § 112, ¶6.
>
> Function: "comparing said retrieved characteristic information with master characteristic information associated with at least one genuine bill; said signal processing means generating an indication of the denomination of said bill based on said comparison when said retrieved characteristic information sufficiently matches said master characteristic information."

> The corresponding structure is "a CPU programmed to carry out the correlation algorithm disclosed in the specification to compare the scanned signal samples, or scanned patterns, from the unknown bills with the stored master characteristic pattern."
>
> Under §112 ¶6, the claim will literally cover the above structure and its equivalents.

[Doc. #66, Order on Agreed Claim Terms at 3.] Defendants assert that the "correlation algorithm" performed by the accused devices is not identical or equivalent to the "correlation algorithm" as recited in the '354 patent's specification. However, for the reasons stated on the record at [Doc. #220 at p. 142, l. 10 through p. 144, l. 7 and p. 133, l. 5 through p. 134, l. 19], the court believes there was sufficient evidence from which a jury could have found that the differences between the "correlation algorithm" described in the specification and the one performed by the accused devices are insubstantial, and thus that the algorithm performed by the accused devices is equivalent to the one described in the specification. Therefore, Defendants' motion for JMOL that claim 55 of the '354 patent is not infringed by the accused products is denied.

*2. Validity*

Defendants move for JMOL that claim 55 of the '354 patent is invalid as anticipated by the JetScan 4061 [Ex. No. DX211]. For the reasons stated on the record at [Doc. #220 at p. 149, l. 4 through p. 152, l. 8 and p. 153, l. 13 through p. 154, l. 23], this motion is denied.

Defendants move for JMOL that the priority date of claim 55 of the '354 patent is May 12, 1998, the '354 patent's filing date. Plaintiff asserts that claim 55 is entitled to the earlier priority date of March 7, 1995, based on the filing date of U.S. Patent No. 5,875,259. For the reasons stated on the record at [Doc. #220 at p. 164, ll. 1-11; p. 166, l. 7 through p. 169, l. 6; and

p. 170, l. 7 through p. 171, l. 13], the court finds that claim 55 of the '354 patent is not entitled to an earlier priority date, and Defendants' motion for JMOL is granted.

Plaintiff moves for JMOL that the JetScan 4062 [Ex. No. DX277] is not prior art to claim 55 of the '354 patent. The JetScan 4062 was introduced to the market in November 1994. [Doc. #220 at p. 162, l. 4.] Pursuant to the court's finding that the priority date of claim 55 is May 12, 1998, the JetScan 4062 is prior art, because it was in public use or on sale in this country more than one year prior to the application date of the '354 patent, *see* 35 U.S.C. § 102(b). Therefore Plaintiff's motion for JMOL that the JetScan 4062 is not prior art is denied.

Defendants move for JMOL that claim 55 of the '354 patent is invalid as anticipated by the JetScan 4062. Plaintiff admits that the JetScan 4062 practices claim 55 of the '354 patent [Doc. #108-2, Pl.'s Infringement Contentions at 3.] Since the court has found that the JetScan 4062 is prior art, and Plaintiff admits that it practices the claim in question, Defendants' motion for JMOL that claim 55 of the '354 patent is invalid as anticipated by the JetScan 4062 is granted. Accordingly, Plaintiff's motion for JMOL that claim 55 of the '354 patent is valid is denied.

**E. Motions for JMOL Relating to the '456 Patent**

*1. Infringement*

Defendants' motion for JMOL that claim 41 of the '456 patent is not infringed was denied on the record at trial. [*See* Doc. #201, Jury Trial Tr. Vol. 4 at p. 911: ll. 17-18.] Similarly, Plaintiff's motion for JMOL that claim 41 of the '456 patent is infringed was granted on the record at trial. [*See* Doc. #204, Jury Trial Tr. Vol. 7 at p. 1488: ll. 15-19.] Defendants do

not dispute that the accused devices practice the method claimed in claim 41. [*See* Doc. #202, Jury Trial Tr. Vol. 5 at p. 1201, l. 10 through p. 1203, l. 4.]

*2. Validity*

Defendants move for JMOL that U.S. Patent No. 5,295,196 ("the '196 patent") does not meet the written description requirement as to claim 41 of the '456 patent, specifically that the '196 patent does not disclose claim 41's limitation requiring "a plurality of output receptacles." For the reasons stated on the record at [Doc. #220 at p. 174, l. 8 through p. 175, l. 9], and explained more fully by Judge Guzman in *Cummins-Allison Corp. v. Glory, Ltd.*, No. 02 C 7008, 2005 WL 711991, at *7 (N.D. Ill. Mar. 28, 2005), the court finds that the '196 patent specification adequately discloses a "plurality of output receptacles." Therefore, Defendants' motion for JMOL is denied.

> At the post-trial hearing, Plaintiff and Defendants entered into a stipulation that
>
> 1. The court's decision to deny Plaintiff's motion to correct inventorship is appealable. This denial results in a priority date as of the April 4, 1997 filing date for the '456 patent.
>
> 2. Plaintiff stipulates that claims 35 and 41 of the '456 patent are invalid over the GFR-100. This stipulation is contingent upon the appellate court affirming a decision denying Plaintiff's motion to correct inventorship.
>
> 3. The parties agree that if the appealed decision denying Plaintiff's motion to correct inventorship is reversed, the Defendants' tenth affirmative defense of inequitable conduct during the reexam of the '456 can be tried on remand.

[Doc. #220 at p. 172, ll. 3-19.] Based on this stipulation, Defendants' motion for JMOL that claim 41 of the '456 patent is invalid as obvious over the GFR-100 [Ex. No. DX210] is granted. Accordingly, Plaintiff's motion for JMOL that claim 41 of the '456 patent is valid is denied.

## IV. Conclusion

For the reasons stated in this order and at the post-trial hearing on October 22-23, 2009, it is hereby **ORDERED** that:

Plaintiff Cummins-Allison Corporation's Motion to Recognize the Correction of the Named Inventors of U.S. Patent No. 5,966,456 or To Enter an Order of Correction of Named Inventors of U.S. Patent No. 5,966,456 Pursuant to 35 U.S.C. § 256 [Doc. #180] is **DENIED**;

Defendants' motions for JMOL that SBM's and Amro's infringement was not willful are **DENIED AS MOOT**;

Defendants' motions for JMOL that claims 58, 85, and 120 of the '806 patent are invalid as obvious are **DENIED**;

Plaintiff's motions for JMOL that the "Mosler CF-400 Currency Sorter Parts Catalog" [Ex. No. DX68] and the "Specification on Toshiba Currency Fitness Sorter Model CF-401" [Ex. No. DX69] are not printed publications are **DENIED AS MOOT**;

Defendants' motion for JMOL that claim 15 of the '503 patent is not infringed by the accused products is **DENIED**;

Plaintiff's motion for JMOL that claim 15 of the '503 patent is valid is **DENIED AS MOOT**;

Defendants' motion for JMOL that claim 15 of the '503 patent is invalid as obvious is **DENIED**;

Defendants' motion for JMOL that claim 55 of the '354 patent is not infringed by the accused products is **DENIED**;

Defendants' motion for JMOL that claim 55 of the '354 patent is invalid as anticipated by the JetScan 4061 [Ex. No. DX211] is **DENIED**;

Defendants' motion for JMOL that the priority date of claim 55 of the '354 patent is May 12, 1998 is **GRANTED**;

Plaintiff's motion for JMOL that the JetScan 4062 [Ex. No. DX277] is not prior art to claim 55 of the '354 patent is **DENIED**;

Defendants' motion for JMOL that claim 55 of the '354 patent is invalid as anticipated by the JetScan 4062 is **GRANTED**;

Plaintiff's motion for JMOL that claim 55 of the '354 patent is valid is **DENIED**;

Defendants' motion for JMOL that the '196 patent does not meet the written description requirement as to claim 41 of the '456 patent is **DENIED**;

Defendants' motion for JMOL that claim 41 of the '456 patent is invalid as obvious over the GFR-100 [Ex. No. DX210] is **GRANTED**; and

Plaintiff's motion for JMOL that claim 41 of the '456 patent is valid is **DENIED**.

Although Plaintiff has prevailed on only two of the four patents-in-suit, the parties agreed that the damage award would be the same if one or more of the patents-in-suit were found to be infringed, with the exception that there would be a slight reduction in damages if only the '503 patent was found infringed. [*See* Doc. #220, at p. 82, l. 7 through p. 83, l. 2.] The grant of JMOL as to the invalidity of the asserted claims of the '354 and '456 patents does not alter the measure of damages. Judgment will therefore be entered on the verdict for the amount of damages found by the jury, together with pre-judgment and post-judgment interest to be calculated as stated on the record. [*See* Doc. #221, Post-trial Hr'g Tr. at p. 235, ll. 18-20 and

p. 236, ll. 19-25 (pre-judgment interest); Doc. #220 at p. 197, ll. 20-22 (post-judgment interest, referring to 28 U.S.C. § 1961).]

So **ORDERED** and **SIGNED** this **13** day of **November, 2009.**

_____
Ron Clark, United States District Judge